IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 13-20139-JPM-dkv |
| | ) | |
| | ) | |
| FRED MASTERS, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant Fred Masters, Jr. ("Masters") is under indictment for manufacturing a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1); maintaining a place for the purpose of manufacturing, distributing, or using any controlled substance, specifically methamphetamine, in violation of 21 U.S.C. § 856; and possession of equipment, chemicals, products, and materials which may be used, and have reasonable cause to believe would be used, to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 843(a)(6). (D.E. 1.) On July 17, 2013, Masters filed a Motion to Suppress evidence pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure. (D.E. 19.) Masters contends that the search warrant for his residence was defective in that the affidavit's supporting facts failed to

provide any basis for law enforcement to search someone's home and that it failed to provide the requisite nexus between the home and the evidence sought. Masters also contends the good-faith exception does not apply in this case. (*Id.*) The government filed a Motion for Extension of Time to File Response to Master's Motion to Suppress, which the court granted. (D.E. 24 & 25.) The United States thereafter timely filed an opposing memorandum on August 16, 2013. (D.E. 27.)

The motion was referred to the United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (D.E. 30.) Based on the pleadings, the court submits the following findings of fact and conclusions of law and recommends that the motion to suppress be denied.[1]

I. PROPOSED FINDINGS OF FACT

On March 3, 2012, Investigator Brent Chunn ("Investigator Chunn") with the Tipton County Sheriff's Office applied for a warrant to search the person and premises of Sharon Hebert ("Hebert") by completing and executing, under oath, an affidavit for a search warrant. (Aff. for Search Warrant, D.E. 27-1.) As grounds for issuance of the search warrant, Investigator

---

[1] No evidentiary hearing was held. The sufficiency of the evidence supporting probable cause "is limited to the information and circumstances contained within the four corners of the underlying affidavit." *United States v. Stewart*, 762 F.2d 775, 778 (6th Cir. 1985). The court may not consider information presented for the first time at a suppression hearing. *Id.*

2

Chunn identified Hebert in his affidavit as purchasing a very large amount of pseudoephedrine pills, which he tracked through the use of the Tennessee Methamphetamine Task Force website database ("Task Force database"). (*Id.* at 1.) The affidavit also contained information about Investigator Chunn's training. Investigator Chunn attended and graduated from basic Clandestine Methamphetamine Lab School, where he trained "in the specialized aspect of [m]ethamphetamine 'labs'" and became "certified to enter and dismantle labs." (*Id.*) The program prepared him to detect potential labs, "including the precursors, chemicals and other components needed to manufacture [m]ethamphetamine." (*Id.*) His affidavit characterized the Task Force database as "an investigative tool [used] to monitor all purchases and attempted purchases of pseudoephedrine," the main precursor to the manufacturing of methamphetamine. (*Id.*) The Task Force database also tracks blocked purchases, which occur on the attempted purchase of over nine grams of pseudoephedrine within a thirty-day period. (*Id.*)

In support of his application for a search warrant, Investigator Chunn's affidavit stated: "[s]ince 3/12/2011 to this date, Sharon Hebert has purchased @43.68 grams of pseudoephedrine pills from 2 different counties, including Shelby County, TN and Tipton County[,] TN" and from "different pharmacies in Shelby County, TN and Tipton County, TN." (*Id.*)

Investigator Chunn identified this purchasing technique as a "consistent practice[] of . . . methamphetamine cooks and/or smurfers (persons that shop for materials used to manufacture methamphetamine)." (*Id.*) The affidavit also stated that "Sharon Hebert has been arrested for Felony Possession of Schedule II (Meth) with Intent and Felony Possession of Schedule II. Fred Masters, [Jr.] who is Sharon Hebert['s] husband, also resides at the residence and has also been arrested for Initiation of Methamphetamine, Felony Possession of Schedule II (Meth) with Intent." (*Id.* at 2.) The affidavit identified Hebert's residence as a single family dwelling, located at 4530 Pickens Store Road in Mason, Tennessee. (*Id.* at 1.)

Based on the affidavit of Investigator Chunn, Chancellor Martha B. Brasfield found probable cause to believe that Hebert had on her person or in her home "methamphetamine and/or components of a methamphetamine lab and any receipts or documents pertaining to the purchase of pseudoephedrine." (Search Warrant, D.E. 27-1 at 3.) Chancellor Brasfield signed the search warrant at 5:55 P.M. on March 3, 2012. (*Id.*) That same day, at approximately 8:00 P.M., officers from the Tipton County Sheriff's Office, including Investigator Chunn, executed the search warrant. When the officers arrived at 4530 Pickens Store Road, Masters fled the scene on foot; he was apprehended two days later. Meanwhile, Hebert was detained, and an

4

altercation ensued that led to the police shooting a pit bull dog at the home. During the search of the home, the officers seized nine Sudafed tablets, a pill bottle with a white powdery substance, coffee filters, four lithium batteries, three pipes, a glass vile with a white powdery substance, five white tablets, a gas generator, and three ounces of Coleman fuel. Masters moves to suppress this evidence as the fruit of an illegal search unsupported by probable cause and in violation of the Fourth Amendment.

II. PROPOSED CONCLUSIONS OF LAW

Because the search of Masters' house at 4530 Pickens Store Road was conducted pursuant to a search warrant, Masters bears the burden of proof as the defendant. *See Rakas v. Illinois*, 439 U.S. 128, 131, n.1 (1978); 6 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 11.2(b) (5th ed. 1996).

The issue before the court is whether the affidavit on which the search warrant was based provided probable cause for the issuance of the warrant. If the search warrant lacks probable cause, the search was unlawful and the evidence seized should be suppressed.

Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances that indicate "a fair probability that evidence of

5

a crime will be located on the premises of the proposed search." *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)(quoting *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir. 1983)). In reviewing whether such a probability existed, courts should examine the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213 (1983). The aggregation of facts, each one insufficient standing alone, may suffice to establish probable cause. *United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 284 (6th Cir. 1992)(citing *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1234 (9th Cir. 1988)(civil forfeiture action under 21 U.S.C § 8816(a)(6) using same probable cause standard employed in search and seizures)). A court must, in determining whether the information is sufficient, "weigh not the individual layers but the laminated total." *United States v. Nigro*, 727 F.2d 100, 104 (6th Cir. 1984)(quoting *Smith v. United States*, 358 F.2d 833, 837 (D.C. Cir. 1966))(internal quotation marks omitted).

In determining whether there is probable cause, a court can consider a defendant's record of prior drug activity. *$67,220.00 in U.S. Currency*, 957 F.2d at 286 (finding a claimant's record of drug activity is highly probative of probable cause). A court can also consider an officer's "training and experience" in determining probable cause, *see*, *e.g.*, *Texas v. Brown*, 460 U.S. 730, 742-43 (1983); *United States*

6

*v. Martin*, 920 F.2d 393, 399 (6th Cir. 1990); but, this cannot substitute for a lack of evidentiary nexus, prior to the search, between the items to be searched for and any criminal activity. *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994).

"An issuing judge may find probable cause to issue a search warrant when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008)(quoting *Gates*, 462 U.S. at 238). A magistrate's determination of probable cause should be paid great deference by a reviewing Court. *Gates*, 462 U.S at 236. The standard of review is whether the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Id.* A magistrate's probable cause determination should be made in "realistic and commonsense fashion," and should be reviewed in the same manner. *Algie*, 721 F.2d at 1041. Moreover, any review of that standard should be undertaken using a "deferential standard." *Bowling*, 900 F.2d at 930. It should be overturned only if the issuing magistrate's discretion was arbitrarily exercised. *United States v. Swihart*, 554 F.2d 264, 267-68 (6th Cir. 1977).

A. <u>Probable Cause</u>

According to Masters, the only factual allegation in the affidavit that supports the issuance of the search warrant was

7

Investigator Chunn's statement that "[s]ince 03/12/2011 to this date, Sharon Hebert has purchased @43.68 grams of pseudoephedrine pills from 2 different counties, including Shelby County, TN and Tipton County[,] TN." Master argues that Hebert's purchases of pseudoephedrine pills in the amount of 43.68 grams in one year did not amount to a violation of state law and thus is not a sufficient basis for finding probable cause. Masters further argues that the affidavit's lack of specificity as to when the purchases occurred makes it impossible to determine whether the information was stale. As Masters points out, because the dates of Hebert's purchases are not provided in the affidavit, it is possible that no purchases were made in the months leading up to the search. Masters also contends that the affidavit fails to provide the requisite nexus between Sharon Hebert's home and the evidence sought.

Under Tennessee law, "[a] person shall not purchase products containing more than six tenths (.6) grams per day, or more than nine (9) grams per thirty day period of ephedrine or pseudoephedrine, base, their salts, isomers, or salts of isomers." Tenn. Code Ann. § 39-17-431(c)(2). Thus, anyone purchasing less than 9 grams per month (or 108 grams per year) is not in violation of the law. Here, the affidavit states that Hebert purchased 43.68 grams of pseudoephedrine pills in

8

approximately a one year period, which would be below the legal limit.

It is not necessary, however, that a violation of law be established in an affidavit in order for probable cause for the issuance of a search warrant to exist. The relevant inquiry is "whether there is a fair probability that contraband will be found in a particular place." *Williams*, 544 F.3d at 686. "Investigator Brett Chunn identified Sharon Hebert as purchasing a very large amount of pseudoephedrine pills, through the use of the Tennessee Methamphetamine Task Force database." (Aff. for Search Warrant, D.E. 27-1 at 1.) Pseudoephedrine is the main precursor to the manufacturing of methamphetamine. (*Id.*) The purchases were made at different pharmacies in two different counties. According to Inspector Chunn's affidavit, the practice of purchasing pseudoephedrine at multiple pharmacies is consistent with practices of methamphetamine cooks or smurfers (persons who shop for materials to use in making methamphetamine). (*Id.*) The substantial amount of Hebert's purchases of pseudoephedrine in the preceding year and her pattern of purchases are factors that are highly probative of the existence of probable cause. Though the affidavit did not specify whether any purchases exceeded the legal limit of nine grams of pseudoephedrine within thirty days, the substantial amount of 43.68 grams of pseudoephedrine purchased over the

9

course of a year in different counties at different pharmacies still gives rise to a fair probability that methamphetamine was being produced.

A court can also consider an officer's training and experience, *see, e.g.*, *Brown*, 460 U.S. at 742-43; *Martin*, 920 F.2d at 399, as long as there is another evidentiary nexus to support probable cause, which is present in the instant case. *Schultz*, 14 F.3d at 1097. Investigator Chunn was "trained in detecting possible 'labs' including the precursors, chemicals and other components needed to manufacture Methamphetamine." (Aff. for Search Warrant, D.E. 27-1 at 1.) The affidavit established that Hebert made multiple purchases of pseudoephedrine in two different counties during the past year, amounting to 43.68 grams. Based on the affiant's training and experience, this purchase technique and quantity of pseudoephedrine, in his opinion, was consistent with the practices of methamphetamine cooks or smurfers.

In addition, a court can consider a defendant's record of prior drug activity in determining probable cause. *$67,220.00 in U.S. Currency*, 957 F.2d at 286. As set out in the affidavit, Hebert and Masters both resided at 4530 Pickens Store Road and were previously arrested for felony possession of methamphetamine. (*Id.* at 2.)

Having reviewed the affidavit, the court finds that under the totality of the circumstances, the aggregation of facts in the affidavit support a finding of probable cause. The facts, when taken collectively, could lead a reasonable person to conclude there was a probability that methamphetamine, components of a methamphetamine lab, and any receipts or documents pertaining to the purchase of pseudoephedrine would be at 4530 Pickens Store Road.

B. <u>Nexus</u>

An affidavit for a search warrant must state a nexus between the place to be searched and the evidence sought. *Williams*, 544 F.3d at 687. In establishing a nexus between the suspected criminal activity and the suspect's residence, "an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking." *Williams*, 544 F.3d at 687. In cases involving a variety of suspected crimes, "an issuing judge may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence." *Id.* at 688.

Having reviewed the affidavit, the court finds that it sets forth a substantial basis for concluding that a search of the residence at 4530 Pickens Store Road would reveal evidence of methamphetamine, components of a methamphetamine lab, and receipts or documents relating to the purchase of

11

pseudoephedrine. The affidavit established that both Hebert and Masters reside at 4530 Pickens Store Road and that they both had been previously arrested for methamphetamine distribution. Inspector Chunn was specially trained in detecting possible methamphetamine labs, including the components needed to manufacture methamphetamine. He identified pseudoephedrine as a precursor for the manufacture of methamphetamine. It was reasonable to infer that Hebert and Masters would store the methamphetamine components and equipment at their residence. Based on this information, the affidavit established the required nexus between the items sought — the methamphetamine-related materials — and the defendant's residence.

C. <u>Staleness</u>

When determining the requisite nexus, the question of staleness depends on the "inherent nature of the crime." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). Staleness is not measured by counting days on the calendar. *Id.* Courts consider several variables including the character of the crime, the criminal, the thing to be seized, and the place to be searched. *Id.* Masters' argument that the affidavit contained no specific evidence of pseudoephedrine purchases that may have occurred in the months leading up to March 2012 solely measures staleness by counting the days on a calendar. Courts, however,

12

according to *United States v. Spikes*, should also consider the following variables:

> The character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), *etc.*" *Id.* at 923 (quoting *Andresen v. State,* 331 A.2d 78, 106 (1975))(internal quotation marks omitted). As these variables demonstrate, even if a significant period has elapsed since a defendant's last reported criminal activity, it is still possible that, depending upon the nature of the crime, a magistrate may properly infer that evidence of wrongdoing is still to be found on the premises.

*Id.* (citing *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972)).

The crime at issue in this case — possession of methamphetamine or components of a methamphetamine lab — is of an ongoing, regenerating nature. *See id.* Even if Hebert had made no purchases of pseudoephedrine in the days and even month before the issuance of the search warrant, her recurring purchases of a substantial amount over the course of a year still gives rise to a fair probability that Hebert and Masters could cook methamphetamine or had the components necessary to do so in their possession at the time the search warrant was issued. The methamphetamine-related items to be seized all have enduring utility for the manufacture of methamphetamine. *See id.* Indeed, it is reasonable to infer that Hebert and Masters

13

may have had to accumulate the components necessary to cook methamphetamine, i.e., pseudoephedrine over a period of time. In addition, the residence at 4530 Pickens Store Road is described as a single family dwelling where both Hebert and Masters reside, making it akin to the "secure operational base" described in *Spikes*. *See id.* Thus, the Chancellor properly concluded that it was probable that evidence of wrongdoing – pseudoephedrine and other components of methamphetamine – may be found at the residence.

Moreover, the information in the affidavit is not stale because the crime on which Investigator Chunn based his belief of probable cause was the possession of methamphetamine or components of a methamphetamine lab, not the purchase of nine grams of pseudoephedrine in thirty-days. By purchasing a significant amount of pseudoephedrine within one year in two counties and acting consistently with the practices of methamphetamine cooks or smurfers, Hebert and Masters gave Chancellor Brasfield probable cause to believe that they presently possessed a controlled substance.

Based on this information, Chancellor Brasfield had a sufficient basis for finding that the nature of the crime, and not the passage of time, supported a finding of probable cause to issue a warrant. Therefore, based on the totality of the circumstances, the court finds that the affidavit established a

sufficient basis for the issuance of a search warrant for the residence at 4530 Pickens Store Road.

D.  The Good Faith Exception

In any event, even if there was not a sufficient basis established in the affidavit to find probable cause to issue the warrant, it is submitted that this case falls under the "good–faith" exception of *United States v. Leon*, 468 U.S. 897, 926 (1986). Under *Leon*, the Fourth Amendment exclusionary rule does not apply to suppress evidence obtained by officers acting in a reasonable reliance on a search warrant issued by a neutral and detached magistrate that is later deemed invalid. *Id.* at 922. Suppression is still appropriate if (1) the magistrate was misled by information in the affidavit that the affiant knew to be false or would have known to be false except for the affiant's reckless disregard for the truth; (2) the magistrate is not neutral or detached; (3) the affidavit is so devoid of facts suggesting probable cause making any belief that probable cause exists completely unreasonable; or (4) the warrant is so facially deficient that officers cannot reasonable presume it to be valid. *Id.* at 923.

This "good–faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. "Where a warrant

15

is held to be invalid due to a simple error in the determination of probable cause, the evidence should be suppressed only if the supporting affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Savoca*, 761 F.2d 292, 296 (6th Cir. 1985)(quoting *Leon*, 468 U.S. at 922). A warrant so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable may be suppressed even when the warrant is facially valid and there is no evidence of bad faith or a biased magistrate. *Schultz*, 14 F.3d at 1098 (citing *Leon*, 468 U.S. at 922).

In this case, Master fails to meet his burden of proving the chancellor abandoned her judicial role. *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005). There is no evidence that Investigator Chunn gave a false affidavit or acted in bad faith. The search warrant was issued by a proper authority, Chancellor Brasfield, and was valid in that regard. There is no evidence that Chancellor Brasfield was acting in bad faith or with bias when she issued the search warrant for the residence at 4530 Pickens Store Road. Additionally, the warrant is not so lacking in probable cause that its existence is entirely unreasonable. Thus, it was not entirely unreasonable for the officers to rely upon the search warrant. Accordingly,

the court finds the officers acted in good-faith in executing the warrant.

It is submitted that the warrant was properly issued upon a finding of probable cause, the evidence was lawfully seized, and in any event, even if the warrant were defective, the reliance of the officers on the warrant fits within the *United States v. Leon* "good-faith" exception.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that Master's Motion to Suppress Evidence be DENIED.

Respectfully submitted this 23rd day of September, 2013.

s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.